IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRISCILLA GIUSEFFI<br><br>*Plaintiff,*<br>v.<br><br>KRISTJEN NIELSEN, Secretary U.S. Department of Homeland Security,<br><br>*Defendant.* | CIVIL ACTION<br>NO. 18-00622 |

**PAPPERT, J.**                                                                                                                                                                           December 18, 2018

## **MEMORANDUM**

On October 6, 2010, Priscilla Giuseffi was fired from her job as a disaster reservist at the Federal Emergency Management Agency Region V in Chicago for failing to accept deployments. Giuseffi filed an EEO complaint, alleging her termination was discriminatory. Over one year later, Giuseffi interviewed for and was offered a position with FEMA Region III in Philadelphia. This happened because somehow the FEMA folks in Philadelphia did not know that their colleagues in Chicago had previously fired Giuseffi.

After Giuseffi accepted the Philadelphia job offer but before she started work, Region III officials learned that she had been fired from her previous position, leading them to rescind Giuseffi's job offer. Giuseffi filed this lawsuit, contending that FEMA retaliated against her when they rescinded her job offer because of her prior EEO activity. FEMA filed a motion for summary judgment which, after thoroughly reviewing the record and holding oral argument, the Court now grants. The record shows, and Giuseffi makes no evidence-based argument to the contrary, that the FEMA

1

officials who rescinded Giuseffi's Region III job offer did not know when they made that decision that Giuseffi had filed an EEO action over her termination from Region V.

I

Giuseffi began working for FEMA on March 22, 1993. (Compl. ¶ 5.) She was employed as a disaster reservist in Region V until October 6, 2010, when she was fired by the agency. (Compl. ¶ 6.) Colleen Finkl, the Individual Assistance Branch Chief for FEMA Region V, terminated Giuseffi for failing to accept deployments. *See* (Mot. Summ. J. Ex. 8 ("Termination Packet"), ECF No. 24-8). On October 7, 2010, Giuseffi appealed her firing to the Director of the Recovery Division at FEMA, Christine Stack. *See* (*id.* at PG-FEMA-01333–41). Stack denied Giuseffi's appeal on October 27, 2010. *See* (*id.* at PG-FEMA-01342–44). Shortly thereafter, Giuseffi filed an EEO complaint, alleging that her termination was discriminatory. (Compl. ¶ 7.)

In September 2011, Giuseffi applied for an open position in Region III as a Grants Management Specialist. (*Id.* at ¶ 8.) Giuseffi interviewed for the position with Region III officials on two separate occasions. (*Id.* at ¶ 9.) As part of her application, Giuseffi submitted written materials, but did not explain that she had been fired from her Region V position and the topic somehow never came up during her interviews. *See* (Mot. Summ. J. Ex. 3, ECF No. 24); (Compl. ¶ 12).

After the interview process, the Director of Grants Management in Region III, Janice Barlow, recommended to the selecting official in Region III, MaryAnn Tierney, that she hire Giuseffi for the position. (Mot. Summ. J. Ex. 5 ¶ 6 ("Barlow Decl."), ECF No. 24-6.) Giuseffi was offered the position in Philadelphia and she accepted the offer. (Compl. ¶¶ 13, 15.) Her scheduled start date was January 3, 2012. (*Id.* at ¶ 15.) When

responding to the offer, Giuseffi submitted a Declaration for Federal Employment (otherwise referred to as a "306"), in which she stated that she had previously been terminated from a position and had filed an EEO complaint. *See* (Mot. Summ. J. Ex. 12, ECF No. 24-13). This document was sent directly to FEMA's headquarters in Virginia and not provided to any officials in FEMA Region III. (Hr'g Tr. 10:17–24); (Mot. Summ. J. Ex. 4 at 7:10–12, ECF No. 24-5).

Before starting her new job, Giuseffi had several conversations with Kenneth Ragozzino, a Human Resources Specialist for Region III, about delaying her start date due to personal issues. (Mot. Summ. J. Ex. 7 ¶ 3 ("Ragozzino Decl."), ECF No. 24-8.) On December 29, 2011 at 6:49 a.m., Ragozzino emailed FEMA's national human resources department in Winchester, Virginia. *See* (*id.*); (Resp. Opp'n Mot. Summ. J. Ex. D at PG-FEMA-01364, ECF No. 28-3). Ragozzino mentioned that Giuseffi "has a 'family emergency' of sorts and wants to know if she can start a week later." (*Id.*) Ragozzino also inquired as to whether Giuseffi had "any accrued leave to her credit." (*Id.*)

Ragozzino learned from human resources in Virginia that Giuseffi had been fired for cause by FEMA Region V. (Ragozzino Decl. ¶ 4.) Specifically, he received an email at 11:27 a.m. in response to his inquiry with information "on the Giuseffi termination case" which included as attachments the October 5, 2010 termination notice prepared by Colleen Finkl, Giuseffi's October 7, 2010 appeal of the termination notice and Christine Stack's October 27, 2010 letter rejecting Giuseffi's appeal. *See* (Termination Packet at PG-FEMA-01330–44); (Barlow Decl. ¶ 11); (Ragozzino Decl. ¶ 5). While the

documents explained the circumstances surrounding Giuseffi's termination, they did not mention Giuseffi's EEO action. *See* (Termination Packet at PG-FEMA-01330–44).

Ragozzino told Barlow and other officials in the Philadelphia Office what he had learned. *See* (Ragozzino Decl. ¶ 4); (Barlow Decl. ¶¶ 11–12). After finding out that Giuseffi had been fired from Region V, Barlow made the decision to rescind the offer to Giuseffi after consulting with Robert Welch and Ragozzino. (Barlow Decl. ¶ 14.) Barlow then instructed Ragozzino to request that human resources in Virginia rescind the job offer. (Ragozzino Decl. ¶ 7.) At 3:31 p.m., Ragozzino emailed HR employees in the national office, asking them to tell Giuseffi that her job offer had been rescinded. (Mot. Summ. J. Ex. 10 at PG-FEMA-01280, ECF No. 24-11.) The email stated that "Regional management does want to move forward to rescind the offer, but would prefer to do so today. In light of the applicant's pending relocation, if we could mitigate any commitments she has made financially or otherwise, it would be to her benefit. Is there someone on your staff such as Katie Short, who could make the call today?" (*Id.*)

After receiving the email from Ragozzino, Short called Giuseffi to tell her that her job offer had been rescinded. *See* (Compl. ¶ 17). Short then emailed Giuseffi at 3:57 p.m. stating "This e-mail is a follow-up to our phone conversation a few minutes ago in which I informed you that FEMA is rescinding the job offer of Grants Management Specialist with Region III in Philadelphia, PA due to information recently brought to light through reference checks." (Mot. Summ. J. Ex. 11 at FEMA-0049–50, ECF No. 24-12.)

While all of this was going on, Ragozzino was trying to learn more about Giuseffi's Declaration of Federal Employment. At 12:11 p.m., Ragozzino asked Human

4

Resources Specialist Lon Cabot, who also worked in Virginia, "I'm wondering what OF 306 says that Giuseffi would have sent Marie Jordan when responding to the offer." (Reply Supp. Mot. Summ. J. Ex. 2 at PG-FEMA-01284, ECF No. 28-2.) At 12:25 p.m., Cabot replied that "After lunch, when the person who is the keeper of the office keys returns, Katie is going to check Anne's office for the 306 and will email you and me what she finds." (*Id.*) At 3:05 p.m., Ragozzino asked "Were you able to track down the 306?" (*Id.* at PG-FEMA-01283.) Short responded to Ragozzino at 3:41 p.m., stating that "I have Ms. Giuseffi's OF-306 and she responded Yes to the question- During the last 5 years have you been fired from any job for any reason, did you quit after being told that you would be fired . . . " (*Id.*) At 3:43 p.m., Ragozzino replied, "Did [Giuseffi] elaborate on page 2 in the blank space provided?" (*Id.*) Short answered at 3:46 p.m. "Yes, she states 'Terminated from Reservist employment with FEMA on 10/5/10 . . . A formal complaint has been filed with ERO/EEO in October 2010.'" (Resp. Opp'n Mot. Summ. J. Ex. D at FEMA-1278). While Short told Giuseffi that her job offer was rescinded, the decision to rescind was made by officials in Region III, not Short. *See* (Mot. Summ. J. Ex. 10 at PG-FEMA-01280); (Barlow Decl. ¶ 14).

Several months after Region III rescinded her job offer, Giuseffi timely filed a formal discrimination complaint with the EEOC, alleging that the rescission of her job offer was retaliatory based on her prior EEO activity. (Compl. ¶ 19.) On April 20, 2016, the judge held an administrative hearing, *see* (Mot. Summ. J. Ex. 9, ECF No. 24-10), and on May 12, 2016 denied Giuseffi's complaint, finding that Giuseffi had failed to establish a *prima facie* case of discrimination and that she had failed to demonstrate pretext, *see* (Mot. Summ. J. Ex. 4, ECF No. 24-5). Giuseffi appealed that decision on

5

the merits. (Compl. Ex. A at 1.) On June 22, 2017, the EEOC denied Giuseffi's appeal. *See* (Compl. ¶ 20). Giuseffi filed a request for reconsideration, which the EEOC denied on November 9, 2017. *See* (Stip. Amend Compl., ECF No. 7). Giuseffi filed this lawsuit three months later.

II

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the non-moving party will not suffice. *Id.* at 252. There must be evidence by which a jury could reasonably find for the non-moving party. *Id.*

Reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). A court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

III

Title VII prohibits an employer from discriminating based on an employee's race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2(a), and from retaliating

against an employee for complaining about, or reporting, discrimination or retaliation, 42 U.S.C. § 2000e–3(a). Giuseffi contends that the Region III officials rescinded her job offer in retaliation for her filing an EEO action over her termination from her job in Region V.

Absent direct evidence of retaliation, Title VII retaliation claims are analyzed according to the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Giuseffi must first establish a *prima facie* case for retaliation. *Id.* at 802. This burden is not intended to be onerous. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If she can do so, the burden shifts to FEMA to articulate a legitimate nondiscriminatory reason for its actions. *McDonnell Douglas Corp*, 411 U.S. at 802. "This burden is 'relatively light,' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'" *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994)). If the employer succeeds, the burden shifts back to Giuseffi to prove by a preponderance of the evidence that FEMA's legitimate, nondiscriminatory reasons are pretext for discrimination. *See Fuentes*, 32 F.3d at 763.

Giuseffi cannot establish a *prima facie* case for retaliation; even if she could, FEMA has articulated a legitimate, non-discriminatory reason for rescinding Giuseffi's job offer and Giuseffi is unable to show that this reason was a pretext for discrimination.

A

To establish her *prima facie* case, Giuseffi must show that: (1) she engaged in protected conduct; (2) that she was subject to an adverse employment action subsequent to such activity; and (3) that a causal link exists between the two. *See Kachmar v. Sungard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997). The first two elements are uncontested: Giuseffi engaged in a protected activity when she filed an EEO complaint following her termination from Region V, *see* (Compl. ¶ 19) and suffered an adverse employment action when Region III rescinded her job offer. *See* (*id.* at ¶ 18). FEMA asserts, correctly as it turns out, that the record evidence precludes a jury from finding the required causal connection between the two. (Mot. Summ. J. at 9, ECF No. 24.)

At the *prima facie* stage, Giuseffi must introduce evidence "sufficient to raise the inference that her protected activity was the likely reason for the adverse [employment] action." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017). A plaintiff may rely on "a broad array of evidence" to show that this causal relationship exists. *See LeBoon*, 503 F.3d at 232 (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir. 2000)). This burden is typically met through evidence of a temporal proximity "unusually suggestive of retaliatory motive," a pattern of antagonism against the plaintiff or an employer's inconsistent explanation for taking an adverse employment action. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015) (citations omitted). A plaintiff cannot, however, establish that there was a causal connection "without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted." *See id.*;

*see also Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007); *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006); *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002)).

That is the case here. There is no record evidence showing that the individuals responsible for rescinding the job offer had knowledge of Giuseffi's prior EEO activity at the time they made that decision. To the contrary, the record evidence establishes that the decision to rescind Giuseffi's offer was made before anyone involved in that decision learned of her EEO activity. Both Ragozzino and Barlow asserted in sworn statements that they were unaware of Giuseffi's EEO activity at the time Barlow made the decision to rescind Giuseffi's job offer. *See* (Ragozzino Decl. ¶ 11); (Barlow Decl. ¶ 15). Moreover, the email chain shows that Region III officials learned about Giuseffi's EEO activity only after the decision to rescind was made.[1] There is nothing in the record which suggests anything to the contrary.[2]

Because Giuseffi is unable to point to any evidence from which a reasonable juror could find that the decisionmakers at Region III were aware of Giuseffi's prior EEO activity, Giuseffi has failed to "raise the inference that her protected activity was

---

[1] Again, Ragozzino emailed human resources in Virginia at 3:31 p.m. on December 29, 2011, asking to rescind Giuseffi's job offer. *See* (Resp. Opp'n Mot. Summ. J. Ex. D at PG-FEMA-01278). Short emailed Ragozzino at 3:46 p.m. with Giuseffi's 306 Declaration of Federal Employment that contained a reference to Giuseffi's EEO activity. *See* (Resp. Opp'n Mot. Summ. J. Ex. D at FEMA-1278). There is nothing which suggests Ragozzino knew about the EEO complaint when he emailed HR. Moreover, while it cannot be ruled out that Short knew about Giuseffi's EEO complaint before informing Giuseffi that her offer was rescinded, there is no evidence that Short played any role in the decision to rescind.

[2] At oral argument, Giuseffi's counsel tacitly acknowledged as much. His sole argument was that the <u>absence</u> of record evidence creates an issue of material fact with respect to whether the Region III officials were aware of her EEO complaint. *See* (Hr'g Tr. 56:11–15; 57:1–4).

9

the likely reason for the adverse [employment] action." *Carvalho–Grevious*, 851 F.3d at 259.

B

Even if a question of fact remained for the jury with respect to Giuseffi's *prima facie* case, FEMA has articulated a legitimate, non-retaliatory reason for the decision to rescind Giuseffi's job offer—the discovery of her prior termination from Region V. Region III officials were concerned that Giuseffi would be unable to carry out the duties of the Grant Management Specialist position based upon her previous termination. *See* (Barlow Decl. ¶ 17); (Ragozzino Decl. ¶ 13).

The burden therefore shifts back to Giuseffi to demonstrate that this reason was pretextual. *See McDonnell Douglas Corp.*, 411 U.S. at 804. At the summary judgment stage, a plaintiff's claim will survive so long as the plaintiff proffers some evidence, "direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious [retaliatory] reason was more likely than not a . . . determinative cause of the employer's action." *Daniels*, 776 F.3d at 198–99 (quoting *Fuentes*, 32 F.3d at 764).

Giuseffi fails to proffer sufficient evidence on either ground. Giuseffi's principal argument is that Defendant's Motion should be denied because the record evidence upon which FEMA relies is "credibility dependent."[3] *See* (Resp. Opp'n Mot. Summ. J. ¶¶ 9–12, 14–19). Obviously, credibility determinations are for the factfinder and are inappropriate at the summary judgment stage. *See Anderson v. Liberty Lobby*, Inc., 477

---

[3] While Giuseffi submitted no legal memorandum in response to the Defendant's Motion, the Court pieces together her pretext arguments through statements made by counsel at oral argument and Giuseffi's response to Defendant's Statement of Undisputed Facts.

10

U.S. 242, 255 (1986).  However, in order to show pretext to overcome a motion for summary judgment, Giuseffi must point to some evidence that could demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" from which a reasonable juror could conclude that the Defendant's explanation is "unworthy of credence, and hence infer that the employer did not act for the asserted [non-retaliatory] reasons." *Daniels*, 776 F.3d at 199 (citations omitted).  Merely characterizing the record evidence as "credibility dependent" doesn't get it done.

Giuseffi also contends that there are inconsistencies in the record about when Barlow and other FEMA Region III officials learned that Giuseffi was terminated from her previous position.  *See* (Pl. Resp. Opp'n Def. Statement Facts ¶ 9).  Giuseffi claims, citing Barlow's testimony at the April 20, 2016 administrative hearing, that Barlow knew weeks before December 29, 2011 that Giuseffi had been fired.[4]  *See* (Pl. Statement Material Facts ¶ 19, ECF No. 26).  Giuseffi contends that this differs from Barlow's Declaration in which she states she learned of her previous termination on December 29, 2011.  *See* (Barlow Decl.).  However, even if Barlow knew of Giuseffi's prior termination sometime in mid-December, this inconsistency could not lead a reasonable factfinder to disbelieve FEMA's articulated reason for rescinding Giuseffi's job offer.  The issue is whether Barlow was aware of Giuseffi's EEO activity, not that she had been previously fired, prior to rescinding Giuseffi's job offer.

---

[4] Specifically, when Barlow was asked when she learned that Giuseffi had been fired, Barlow responded "I'll be honest with you. I don't remember an exact timeline. I'm thinking – and this is just my assumption – that was probably two to three weeks before [December 29, 2011], but I really don't remember that timeline specifically. It's been quite a while." (Pl. Statement Material Facts Ex. A at 95:18–23.)

11

In addition to the lack of evidence rebutting FEMA's legitimate, nondiscriminatory reason for rescinding Giuseffi's job offer, Giuseffi again fails to show that her filing of an EEO action after being fired by Region V played any role in Region III's decision to rescind her job offer. Unlike the lower casual requirements at the *prima facie* stage, *see Carvalho-Grevious*, 851 F.3d at 259, the plaintiff has the ultimate burden here to prove that retaliatory animus was the "but-for" cause of the adverse employment action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013). For the same reasons discussed above, Giuseffi is unable to show that but-for her EEO activity, her job offer would not have been rescinded.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.